United States District Court
Southern District of Texas

**ENTERED**

April 15, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CIVIL ACTION NO. H-25-2169 |
| v. | § | (CRIMINAL NO. H-18-0344-01) |
| | § | CIVIL ACTION NO. H-25-2625 |
| JOHN CRUISE *and* | § | (CRIMINAL NO. H-18-0344-02) |
| LASHONIA JOHNSON, | § | |
| | § | |
| Defendants/Petitioners. | § | |

## MEMORANDUM OPINION AND ORDER

John Cruise and Lashonia Johnson (collectively, "Petitioners") were found guilty of conspiracy to commit wire fraud and health care fraud, in violation of 18 U.S.C. §§ 1349, 1347, and 1343.[1] Pending before the court are Petitioners' Motions to Jointly File 28 USCS § 2255 Petition Pursuant to F.R.C.P. 20 (Docket Entry Nos. 1104, 1114); Requests to File Oversized 28 U.S.C. § 2255 Briefs (Docket Entry Nos. 1100, 1113); and Petitioners' Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Cruise's § 2255 Motion," Docket Entry No. 1102) ("Johnson's § 2255 Motion," Docket Entry No. 1115). Johnson has also filed numerous motions to amend her § 2255 Motion (Docket Entry Nos. 1131, 1172, 1179, 1183, 1188); motions for bond

---

[1]Judgment in a Criminal Case (Cruise), Docket Entry No. 783, p. 1; Judgment in a Criminal Case (Johnson), Docket Entry No. 786, p. 1. For purposes of identification, all page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing System.

pending appeal (Docket Entry Nos. 1112, 1132, 1151, 1154, 1161, 1171, 1178, 1190, 1217); motions to unseal certain documents (Docket Entry Nos. 1162, 1163, 1222); a Motion for Discovery Under Rule 6 of the Rules Governing 2255 Proceedings (Request for Grand Jury Transcript) (Docket Entry No. 1175); a Motion for Judicial Admission and Judicial Estoppel (Docket Entry No. 1195); and a Pro Se Motion for Correction of Presentence Investigation Report Pursuant to Fed. R. Crim. P. 32 (Docket Entry No  1213).  Cruise has filed a Motion for Release Pending Appeal (Docket Entry No. 1101); Petitioner's Supplemental Motion in Support of 28 U.S.C. § 2255 Motion ("Cruise's § 2255 Supplement") (Docket Entry No. 1191); a Motion for Evidentiary Hearing Pursuant to 28 U.S.C. § 2255(b) (Docket Entry No. 1223); and a Request to Take Judicial Notice of Substitution of Government Counsel (Docket Entry No. 1224).

## I.  **Background**

On July 20, 2018, Petitioners were indicted alongside eleven codefendants in this case.[2]  The 26-count indictment alleged that Petitioners were involved in "a $126 million compounding-fraud scheme to defraud the Department of Labor's . . . insurance program for federal workers and TRICARE, a health program for members of the military and their families."[3]

---

[2]Indictment, Docket Entry No. 1, p. 1.

[3]United States' Combined Opposition to Petitioners John Cruise and Lashonia Johnson's Motions to Vacate, Set Aside, or Correct Sentences Pursuant to 28 U.S.C. § 2255 ("Government's Response") Docket Entry No. 1203, p. 3 (sealed); Indictment, Docket Entry No. 1, pp. 1-2, 4-5 ¶¶ 1, 16-28.

On October 21, 2021, after consulting with their retained counsel, Petitioners pled guilty to count two of the indictment, "which charged them with conspiracy to commit wire fraud and health care fraud, in violation of 18 U.S.C. § 1349."[4]  During their plea hearing, Petitioners stated that they were fully satisfied with the advice and counsel their attorneys provided them and confirmed that the factual bases contained in their plea agreements were a true and correct description of their roles in the offense.[5]  The court explained the consequences of entering a guilty plea and warned Petitioners about the maximum sentence they each faced.[6]  The court accepted the Petitioners guilty pleas after finding that Petitioners were "fully competent and capable of entering . . . a knowing and voluntary plea."[7]

After they pled guilty Petitioners began cooperating with the Government.  The court repeatedly continued Petitioners' sentencing

---

[4]Government's Response, Docket Entry No. 1203, p. 4 (sealed); Rearraignment (Cruise), Docket Entry No. 451; Rearraignment (Johnson), Docket Entry No. 454; Plea Agreement (Cruise), Docket Entry No. 452, p. 1 (sealed); Plea Agreement (Johnson), Docket Entry NO. 455, p. 1.  Petitioners retained individual counsel to represent them in this matter:  Cruise retained Attorneys Kent Schaffer and James Kennedy and Johnson retained Attorney Dan Cogdell.  Cruise's § 2255 Motion, Docket Entry No. 1102, p. 10; Johnson's § 2255 Motion, Docket Entry No. 1115, p. 10.

[5]Transcript of Re-arraignment Proceedings Heard Before the Honorable Sim Lake, United States District Judge ("Rearraignment Transcript"), Docket Entry No. 662, p. 8 lines 14-16, p. 10 lines 23-25, p. 28 lines 2-4, p. 29 lines 18-20.

[6]Id. at 13 line 22 thru p. 14 line 24, p. 18 line 23 thru p. 24 line 10.

[7]Id. at 28 lines 13-20 (Cruise); p. 30 lines 16-22 (Johnson).

so that they could complete their cooperation.[8]  Their cooperation included providing the Government with details about their participation in the conspiracy and "how key aspects of the scheme worked."[9]

Over a year after pleading guilty, Petitioners retained new counsel:  Cruise retained Attorneys Meredith Carpenter-Black and Gordon Armstrong and Johnson retained Attorney Jason Darley.[10] Petitioners then filed motions to withdraw their pleas, asserting actual innocence.[11]  After holding a hearing on their motions, the court denied Petitioners' motions to withdraw their pleas, finding "that the totality of the circumstances [did] not favor allowing [Petitioners] to withdraw [their] guilty plea[s]" because they "failed to show that any of the seven Carr factors weigh[ed] in [their] favor.[12]

On April 13, 2023, the court sentenced Cruise to 240 months' imprisonment and Johnson to 180 months' imprisonment.[13]

---

[8]Order Resetting Sentencing, Docket Entry No. 483 (Cruise); Order Resetting Sentencing, Docket Entry No. 522 (all defendants).

[9]Government's Response, Docket Entry No. 1203, p. 4 (sealed).

[10]Cruise's § 2255 Motion, Docket Entry No. 1102, p. 10; Johnson's § 2255 Motion, Docket Entry No. 1115, p. 10.

[11]Motion to Withdraw Plea (Cruise), Docket Entry No. 682, p. 1; Motion to Withdraw Guilty Plea (Johnson), Docket Entry No. 679, p. 1.

[12]Memorandum Opinion and Order (Cruise), Docket Entry No. 692, p. 7; Memorandum Opinion and Order (Johnson), Docket Entry No. 693, pp. 7-8.

[13]Judgment in a Criminal Case (Cruise), Docket Entry No. 783, pp. 1-2; Judgment in a Criminal Case (Johnson), Docket Entry No. 786, pp. 1-2.

After sentencing, Johnson retained Attorney Susan Clouthier while Cruise continued to be represented by Attorney Armstrong.[14] Petitioners appealed their sentences and convictions to the Fifth Circuit, which affirmed the court's decision to deny Petitioners' motions to withdraw their guilty pleas and Petitioners' sentences and convictions.[15]  The Fifth Circuit issued Cruise's opinion on March 12, 2024, and Johnson's opinion on June 13, 2024.[16]  Because Petitioners did not file a writ of certiorari, their convictions became final 90 days after the Fifth Circuit issued its decisions: June 12, 2024, for Cruise and September 13, 2024, for Johnson. Dodd v. United States, 125 S. Ct. 2478, 2480 (2005).  Accordingly, Cruise had until June 12, 2025, to file a § 2255 motion while Johnson had until September 13, 2025.  See 28 U.S.C. § 2255(f)(1).

On April 23, 2025, Cruise filed his § 2255 Motion, alleging ineffective assistance of counsel and prosecutorial misconduct.[17] On June 3, 2025, Johnson filed her § 2255 Motion, alleging

_____

[14]Johnson's § 2255 Motion, Docket Entry No. 1115, p. 10; Cruise's § 2255 Motion, Docket Entry No. 1102, p. 10.

[15]Notice of Appeal (Cruise), Docket Entry No. 840; Notice of Appeal (Johnson), Docket Entry No. 828, p. 1; Opinion of the Fifth Circuit Court of Appeals (Cruise), Docket Entry No. 1047, pp. 2-3; Opinion of the Fifth Circuit Court of Appeals (Johnson), Docket Entry No. 1058, pp. 2-3.

[16]Opinion of the Fifth Circuit Court of Appeals (Cruise), Docket Entry No. 1047, p. 1; Opinion of the Fifth Circuit Court of Appeals (Johnson), Docket Entry No. 1058, p. 1.

[17]Cruise's § 2255 Motion, Docket Entry No. 1102, p. 12; Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 15.

ineffective assistance of counsel and prosecutorial misconduct.[18] Petitioners have requested to jointly file their § 2255 motions.[19] Before Johnson's one-year filing deadline had expired, she filed two motions to amend her § 2255 Motion, asserting additional grounds for habeas relief.[20] She filed three more motions to amend her § 2255 Motion after her one-year filing deadline.[21]

A number of additional motions are pending before the court: (1) Petitioners have filed numerous motions requesting bond while their § 2255 Motions are considered;[22] (2) Johnson has filed

---

[18]Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 4–8.

[19]Motion to Jointly File 28 USCS § 2255 Petition Pursuant to F.R.C.P. 20 (Cruise), Docket Entry No. 1104; Motion to Jointly File 28 USCS § 2255 Petition Pursuant to F.R.C.P. 20 (Johnson), Docket Entry No. 1114.

[20]Addendum Additional Grounds to the 28 U.S.C. 2255 ("Johnson's Addendum"), Docket Entry No. 1131; Motion to Amend "Prior Submitted" 2255 Motion Pursuant to Fed. R. Civ. P. (15)(a) ("Johnson's Motion to Amend"), Docket Entry No. 1172.

[21]Motion to Amend "Prior Submitted" 2255 Motion Pursuant to Fed. R. Civ. P. (15)(a), Docket Entry No. 1179 (sealed); Petitioner's Motion to Amend Pending § 2255 Petition Under Fed. R. Civ. P. 15(a), Docket Entry No. 1183; Petitioner's Motion to Amend Pending § 2255 Petition Under Fed. R. Civ. P. 15(a), Docket Entry No. 1188.

[22]Notice of No Opposition and Request for Ruling on Defendant's Motion for Bond Appeal (Johnson), Docket Entry No. 1132; Petitioner Lashonia Johnson Motion for Bond Pending Her 2255 in Response to United States Opposition, Docket Entry No. 1151; Petitioner Lashonia Johnson Motion for Bond Pending Her 2255 in Response to United States Opposition, Docket Entry No. 1154; Petitioner Lashonia Johnson Motion for Bond Pending Her 2255 in Response to United States Opposition, Docket Entry No. 1161; Amended Motion for Release Pending 28 U.S.C. 2255 Habeas Review Appeal (Johnson), Docket Entry No. 1171; Emergency Motion for Expedited on Bond Pending 2255 Proceedings (Johnson), Docket Entry No. 1178; (continued...)

numerous motions asking the court to unseal or asking the Government to produce various documents, a motion requesting judicial admission and estoppel, and a motion requesting a correction to her Presentence Investigation Report;[23] and (3) Cruise has filed a motion requesting an evidentiary hearing and a motion requesting that the court take notice of the substitution of Government counsel.[24]

On December 14, 2025, the Government filed a response opposing both of Petitioners' § 2255 Motions.[25]   On January 23, 2026, Petitioners filed a joint reply.[26]   Each attorney involved in this

_____

[22](...continued)
Emergency Motion to Expedite Ruling and Grant Temporary Release Pending 2255 Resolution (Johnson), Docket Entry No. 1190; Motion for Status and Expedited Ruling on Emergency Release and § 2255 Motion (Johnson), Docket Entry No. 1217; Motion for Release Pending Appeal (Cruise), Docket Entry No. 1101.

[23]Motion to Unseal Response Affidavit to File Response Motion to Government Opposition and Prosecutor Misconduct and Interference with Legal Mail and Court Filings, Docket Entry No. 1162; Amendment:  Motion to Unseal Response Affidavit [to] File Response to Government Opposition and Prosecutorial Misconduct Concerning Interference with Legal Mail and Court Filings, Docket Entry No. 1163; Motion for Discovery Under Rule 6 of the Rules Governing 2255 Proceedings (Request for Grand Jury Transcript), Docket Entry No. 1175; Request for Access to Sealed Docket Entries, Docket Entry No. 1222; Petitioner's Motion for Judicial Admission and Judicial Estoppel, Docket Entry No. 1195; Pro Se Motion for Correction of Presentence Investigation Report Pursuant to Fed. R. Crim. P. 32, Docket Entry No. 1213 (sealed).

[24]Motion for Evidentiary Hearing Pursuant to 28 U.S.C. § 2255(b), Docket Entry No. 1223; Request to Take Judicial Notice of Substitution of Government Counsel, Docket Entry No. 1224.

[25]Government's Response, Docket Entry No. 1203, p. 3 (sealed).

[26]Joint Reply to the Government's Response and Supplemental Memorandum in Support of § 2255 Relief Addressing Petitioner
(continued...)

-7-

action has filed an affidavit addressing Petitioners' claims of ineffective assistance of counsel.[27]

On February 25, 2026, the Government also filed a response opposing Johnson's motion to correct her presentence investigation report.[28]  Johnson has filed a reply.[29]

## II.  **Analysis**

Pending before the court are (1) Petitioners' original § 2255 Motions and Johnson's motions to amend her original § 2255 Motion, (2) Petitioners' motions requesting bond, and (3) Johnson's motion requesting judicial admission and estoppel, and (4) Johnson's motion requesting a correction to her Presentence Investigation Report.[30]

---

[26](...continued)
Lashonia Johnson's Individual Additional Grounds, Docket Entry No. 1209.  Cruise also filed an individual reply on January 23, 2026 (Reply to the United States' Combined Opposition Motion - 28 U.S.C. § 2255, Docket Entry No. 1211).

[27]Affidavit of Susan J. Clouthier ("Clouthier Affidavit") (Johnson), Docket Entry No. 1137 (sealed); Affidavit of Kent A. Schaffer ("Schaffer Affidavit") (Cruise), Docket Entry No. 1142 (sealed); Affidavit of James M. Kennedy ("Kennedy Affidavit") (Cruise), Docket Entry No. 1143 (sealed); Affidavit of Gordon G. Armstrong, III ("Armstrong Affidavit") (Cruise), Docket Entry No. 1144 (sealed); Affidavit of Jason Darley ("Darley Affidavit") (Johnson), Docket Entry No. 1152 (sealed); Affidavit of Dan L. Cogdell ("Cogdell Affidavit") (Johnson), Docket Entry No. 1155 (sealed).

[28]Response in Opposition to Defendant's Motion to Amend Presentence Investigation Report, Docket Entry No. 1219 (sealed).

[29]Defendant's Reply in Support of Motion for Clarification of Presentence Investigation Report, Docket Entry No. 1221.

[30]The court will not address the following pending motions in detail because they are moot:  Motion to Unseal Response Affidavit
(continued...)

## A.    Petitioners' § 2255 Motions

Petitioners' original § 2255 Motions argue that they are entitled to habeas relief because (1) they received ineffective assistance of counsel and (2) the government engaged in prosecutorial misconduct throughout their case.[31]

On November 10, 2025, Cruise filed a supplement to his § 2255 Motion.[32] Although the supplement was filed outside of Rule 15(a)'s 21-day window and outside AEDPA's one-year limitation, the court, in its discretion, will permit and consider the arguments contained in the amendment because it "'clarifies or amplifies a claim or theory in a timely filed § 2255 petition after ADEPA's one year statute of limitations has expired'" as opposed to seeking "to add an entirely new claim or new theory of relief." United States v. Flores-Guerrero, No. CIV A. H-04-4617, 2006 WL 2161740, at *3 (S.D. Tex. July 27, 2006) (quoting United States v. Thomas, 221 F.3d 430, 433-34 (3rd Cir. 2000)).

---

[30](...continued)
to File Response Motion to Government Opposition and Prosecutor Misconduct and Interference with Legal Mail and Court Filings, (Docket Entry No. 1162); Amendment: Motion to Unseal Response Affidavit [to] File Response to Government Opposition and Prosecutorial Misconduct Concerning Interference with Legal Mail and Court Filings (Docket Entry No. 1163); Motion for Discovery Under Rule 6 of the Rules Governing 2255 Proceedings (Request for Grand Jury Transcript) (Docket Entry No. 1175); Cruise's Motion for Evidentiary Hearing Pursuant to 28 U.S.C. § 2255(b) (Docket Entry No. 1223); and Cruise's Request to Take Judicial Notice of Substitution of Government Counsel (Docket Entry No. 1224).

[31]Cruise's § 2255 Motion, Docket Entry No. 1102, pp. 4-8; Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 4-8.

[32]Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 15.

On July 11, 2025, Johnson filed a supplement to her § 2255 Motion.[33]  On September 22, 2025, she filed a motion to amend her § 2255 Motion.[34]  Both filings assert new claims or theories of relief.[35]  Although the motions assert new claims, because they were filed within or around the AEDPA's one-year limitation, the court will consider the new claims raised in both motions.  See United States v. Callen, Civil Action No. H-14-207, 2015 WL 1034245, at *12 (S.D. Tex. Mar. 10, 2015) (explaining that an addendum to a § 2255 motion must be filed within AEDPA's one-year limitation); Terry v. United States, No. 2:04CR113-P-B, 2009 WL 3297209, at *9 (N.D. Miss. Oct. 9, 2009) (ruling on Petitioner's addendum that was filed within AEDPA's one-year limitation).[36]

The court therefore considers Cruise's § 2255 Motion as supplemented by Docket Entry No. 1191 and Johnson's § 2255 Motion as amended by Docket Entry Nos. 1131 and 1172.

---

[33]Johnson's Addendum, Docket Entry No. 1131.

[34]Johnson's Motion to Amend, Docket Entry No. 1172.

[35]Johnson's Addendum, Docket Entry No. 1131, p. 5; Johnson's Motion to Amend, Docket Entry No. 1172, p. 1.

[36]Johnson filed three motions to amend after her one-year filing deadline had expired.  Motion to Amend "Prior Submitted" 2255 Motion Pursuant to Fed. R. Civ. P. (15)(a), Docket Entry No. 1179 (sealed); Petitioner's Motion to Amend Pending § 2255 Petition Under Fed. R. Civ. P. 15(a), Docket Entry No. 1183; Petitioner's Motion to Amend Pending § 2255 Petition Under Fed. R. Civ. P. 15(a), Docket Entry No. 1188.  Because the motions were filed outside of her one-year filing deadline and because the motions assert the same arguments raised in Docket Entry Nos. 1131 and 1172, which the court will consider, Johnson's subsequent motions to amend will be denied as moot.

1.   <u>Ineffective Assistance of Counsel Claims</u>

Petitioners' original § 2255 Motions assert that their counsel were ineffective by failing to:   (1) move to dismiss the indictment, (2) move to sever counts and defendants, (3) disclose joint representation before the court in violation of Rule 44 of the Federal Rules of Criminal Procedure, (4) move to withdraw Petitioners' guilty pleas, (5) present evidence of a <u>Brady</u> violation, and (6) impeach the Government attorney with secret recordings.[37]   Johnson's amendments also assert that her counsel were ineffective by failing to (1) raise certain objections to the indictment and presentence investigation report, (2) review the final presentence investigation report with her, (3) raise a selection prosecution claim, (4) allege that Johnson lacked criminal intent, and (5) adequately represent Johnson on appeal.[38]

"A claim for ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be raised on direct appeal." <u>United States v. Conley</u>, 349 F.3d 837, 839 n.1 (5th Cir. 2003) (internal quotation marks and citation omitted). To prevail on an ineffective assistance of counsel claim a convicted defendant must show (1) that defense counsel's

---

[37]Cruise's § 2255 Motion, Docket Entry No. 1102, pp. 4–8; Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 2; Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 39, 40–49.

[38]Johnson's Addendum, Docket Entry No. 1131, pp. 1–5.

performance was deficient and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).

Performance is deficient if the defendant's lawyer "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 2065. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 2066.

To show prejudice a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. For a trial error, the defendant must show that counsel's errors were "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 131 S. Ct. 770, 787-88 (2011).

The court addresses each of Petitioners' claims in the order they allegedly occurred.

> a. Pre-Plea Claims of Ineffective Assistance of Counsel

"A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant," which "includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea

-12-

involuntary." <u>United States v. Glinsey</u>, 209 F.3d 386, 392 (5th Cir. 2000).

The record clearly establishes that Petitioners' guilty pleas were knowing and voluntary. During their plea hearings the court ensured that Petitioners understood the consequences of pleading guilty, warned Petitioners about the maximum sentence each Petitioner faced, and reviewed specific provisions of the plea agreements with Petitioners.[39] Based on Petitioners' responses to the court's questions, the court found the Petitioners were entering their guilty plea knowingly, freely, and voluntarily.[40] These findings were affirmed by the court's order denying Petitioners' motions to withdraw their guilty pleas and by the Fifth Circuit.[41]

Accordingly, because Petitioners entered knowing and voluntary pleas, all of their ineffective assistance of counsel claims that occurred before the pleas are waived. <u>Glinsey</u>, 209 F.3d at 392.

However, even if Petitioners' pre-plea claims were not waived by their knowing and voluntary pleas, their claims fail on the merits.

---

[39]Rearraignment Transcript, Docket Entry No. 662, p. 13 line 22 thru p. 14 line 24; p. 18 line 23 thru p. 24 line 10.

[40]<u>Id.</u> at 28 lines 5-7 and lines 13-20 (Cruise); p. 30 lines 16-22 (Johnson).

[41]Memorandum Opinion and Order (Cruise), Docket Entry No. 692, pp. 4-6; Memorandum Opinion and Order (Johnson), Docket Entry No. 693, pp. 4-6; Opinion of the Fifth Circuit Court of Appeals (Cruise), Docket Entry No. 1047, p. 1; Opinion of the Fifth Circuit Court of Appeals (Johnson), Docket Entry No. 1058, p. 1.

>                         i.   Failure of Schaffer, Kennedy, and Cogdell to
>                              Move to Dismiss the Indictment

Petitioners assert that their counsel were ineffective in failing to move to dismiss the indictment because it was improperly based on Cruise's immunized statements from a prior federal case, Rose v. United States.[42]  Petitioners also assert that their counsel were ineffective in failing to move for a Kastigar hearing.[43]

There is no evidence before this court that suggests the indictment in this case was improperly based on Cruise's immunized statements.  In fact, the record reflects that there was no immunity agreement between Cruise and the Government in Rose.  In his Affidavit Attorney Schaffer stated:

> In fact, I did not know that [Cruise] ever received any type of grant of immunity, and I do not believe that immunity was ever conferred upon him.  At no time did he ever tell me that he was immunized and while he told me that he had testified at the [Rose] trial, it was my understanding that he had received no assurances from the government. . . . I later came to understand that at no time was Mr. Cruise given immunity.
>
> All of that being said, the charges in Mr. Cruises' indictment had nothing to do with the [Rose] case.  In a Kastigar hearing the government would be required to prove that they are not using evidence that was derived

---

[42]Cruise's § 2255 Motion, Docket Entry No. 1102, pp. 4-5; Cruise's § 2255 Supplement, Docket Entry No. 1191, pp. 2-3; Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 4-5, 21-27.

[43]Cruise's § 2255 Motion, Docket Entry No. 1102, pp. 4-5; Cruise's § 2255 Supplement, Docket Entry No. 1191, pp. 2-3; Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 4-5.  In Kastigar v. United States, 92 S. Ct. 1653 (1972), the Court held that when the prosecution uses privileged information in an indictment, they have "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony."  Id. at 1665.

> from Mr. Cruise's prior testimony if that testimony was given under a grant of immunity or was compelled by a court in any way.  This was not what happened, so I saw no reason to file a motion for a <u>Kastigar</u> hearing.[44]

In his Affidavit Attorney Kennedy stated:

> Both [the counsel for the government] and [defendant's former counsel] confirmed that the defendant did not provide testimony under a proffer of immunity.

> . . . Given all of this, after several discussions with the trial team, we felt there were no grounds for a <u>Kastigar</u> hearing because there was no immunized testimony, and there was no tainted grand jury evidence.[45]

Because the indictment did not rely on immunized statements, a motion to dismiss the indictment and secure a <u>Kastigar</u> hearing would have been futile.  Counsel therefore had no obligation to file it.  <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) (stating that counsel is not required to file futile motions "because the result of the proceeding would not have been different had [counsel] raised the issue").

Petitioners also assert that counsel should have moved to dismiss the indictment because it (1) excluded certain facts, (2) misrepresented certain facts, and (3) excluded certain members of the conspiracy, such as Dr. Lanier.[46]  In support of this assertion, Petitioners allege that the government intentionally

---

[44]Schaffer Affidavit, Docket Entry No. 1142, pp. 1-2 (sealed).

[45]Kennedy Affidavit, Docket Entry No. 1143, pp. 1-2 (sealed).

[46]Cruise's § 2255 Motion, Docket Entry No. 1102, p. 4; Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 4; Johnson's § 2255 Motion, Docket Entry No. 1115, p. 4.

left out certain facts in order to "create confusion and improperly assign guilt."[47]

"An indictment is legally sufficient if (1) 'each count contains the essential elements of the offense charged,' (2) 'the elements are described with particularity,' and (3) 'the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense.'" United States v. Cooper, 714 F.3d 873, 877 (5th Cir. 2013) (quoting United States v. Threadgill, 172 F.3d 357, 366 (5th Cir. 1999)).  "The government generally enjoys broad discretion in determining whom it will prosecute." United States v. Ryan, 619 F.Supp.3d 581, 590 (E.D. La. 2022).  The record establishes that the indictment was sufficient.  In his affidavit Attorney Schaffer stated:

> While it is permissible to file a motion to quash the indictment if it fails to state the elements of the offense; in this case I believe that the indictment contained sufficient language and notice and there would have been no basis for quashing the indictment.[48]

In his Affidavit Attorney Cogdell stated:

> . . . [T]here simply is no legal basis for filing a motion to dismiss the indictment based upon insufficient evidence.  Indeed, even had there been any such basis, the evidence against Ms. Johnson was certainly sufficient to overcome any such challenge.[49]

---

[47]Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 4.

[48]Schaffer Affidavit, Docket Entry No. 1142, p. 4 (sealed).

[49]Cogdell Affidavit, Docket Entry No. 1155, p. 2 (sealed).

Petitioners do not explain how the indictment was insufficient nor do they demonstrate that a motion to dismiss would have been granted. Marshall v. Cockrell, No. 3:01-CV-0511-R, 2002 WL 1733718, at *8 (N.D. Tex. July 25, 2002). Accordingly, counsel were not ineffective for failing to move to dismiss the indictment for a lack of sufficiency.

For the reasons explained above, the court finds that Petitioners have failed to establish either prong of the Strickland test for these claims.

### ii. Failure of Cogdell to Raise a Selective Prosecution Claim

Johnson argues that her counsel was ineffective in failing to raise a selective prosecution claim.[50] She argues that the Government engaged in selective prosecution by failing to indict other physicians who wrote the same prescriptions.[51]

"To establish that the government has engaged in unconstitutionally discriminatory selective prosecution, a defendant must make a two-pronged showing." United States v. Webster, 162 F.3d 308, 333 (5th Cir. 1998). "First, [s]he needs to make out a prima facie showing that the has been singled out for prosecution but other similarly situated of a different race were not prosecuted." Id. at 333-34. "Second, [s]he must demonstrate

---

[50]Johnson's Addendum, Docket Entry No. 1131, pp. 2-3.

[51]Id.

-17-

that the discriminatory selection of him for prosecution is invidious or in bad faith, in that it rests on such impermissible considerations as race, religion, or the desire to prevent his exercise of his constitutional rights." Id. at 334.

Although Johnson argues that other doctors who had engaged in similar actions were not prosecuted, she fails to show that the failure to prosecute those doctors was because of race, religion, or some other protected classification. In his Affidavit Attorney Cogdell explained why he did not raise a selective prosecution claim:

> . . . This selective prosecution argument fails for several reasons. First, not every person involved in a criminal enterprise must be charged. The Government is under no obligation to charge anyone and everyone involved. Second, a defendant must show that similarly situated individuals of a different race, religion or other protected classes were not prosecuted. Johnson does not even attempt to even allege such because it cannot be done. Lastly, in this context at least, Johnson must allege and prove that the prosecution was motivated by an intent to discriminate based upon a protected class. Again, Johnson doesn't even attempt to articulate such because it is impossible to do so in this context.[52]

For the reasons explained above, the court finds that Johnson has failed to establish either prong of the Strickland test for this claim.[53]

---

[52]Cogdell Affidavit, Docket Entry No. 1155, p. 6 (sealed).

[53]To the extent that Johnson is attempting to assert a standalone selective prosecution claim, it fails for the same reasons explained above.

     iii. Failure of Schaffer, Kennedy, and Cogdell to
       Move to Sever

Petitioners' original § 2255 Motions assert that their counsel were ineffective by failing to move to sever counts and defendants from the indictment.[54]

"[T]he law of this circuit [holds] that when severance is not required as a matter of law, counsel's failure to seek such relief does not constitute incompetency." Murray v. United States, Civil Action No. 4:13-0032, 2013 WL 12210802, at *6 (S.D. Tex. Sept. 3, 2013) (citing United States v. Garza, 563 F.2d 1164, 1166 (5th Cir. 1977)). "[W]hen severance is not required as a matter of law, the failure to seek such relief can amount to nothing more than a 'mistaken tactical decision.'" Id. (quoting Garza, 563 F.2d at 1166). In support of the decision to not sever, Attorney Schaffer explained that

> We did not file for severance because there was no legal
> basis to do so. . . . [I]f [Cruise] is talking about a
> severance from co-defendants, there was no plausible
> argument that could have been raised to justify such a
> severance. The weight of the evidence was probably
> stronger against Mr. Cruise than any of the other
> defendants except for his wife. Additionally, at no time
> did Mr. Cruise suggest that he was interested in
> obtaining any type of severance and I do not believe that
> a severance from other defendants would have given him
> any type of advantage.[55]

---

[54]Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 8; Cruise's § 2255 Motion, Docket Entry No. 1102, p. 5; Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 5, 27-31.

[55]Schaffer Affidavit, Docket Entry No. 1142, p. 3 (sealed).

-19-

Attorney Cogdell's Affidavit explained that

Simply stated, there was no viable basis to file a severance motion on behalf of Ms. Johnson. Not only was there no legal basis for so doing, but there was also likewise no tactical basis.[56]

Based on the aforementioned, this court finds counsel's decision not to sever was reasonable. For the reasons explained above, the court finds that Petitioners have failed to establish either prong of the Strickland test for this claim.

### iv. Failure of Schaffer, Kennedy, and Cogdell to Pursue and Assert Certain Defenses

Petitioners' original § 2255 Motions assert that their counsel were ineffective by failing to assert certain defenses.

"[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." Strickland, 104 S. Ct. at 2061. Accordingly, "to show prejudice in regard to a claim that the attorney failed to raise a certain defense, the petitioner must show that the defense likely would have been successful at trial." Mangum v. Hargett, 67 F.3d 80, 84 (5th Cir. 1995).

Petitioners first argue that their counsel were ineffective by failing to assert an advice-of-counsel defense.[57] It is clear from

---

[56]Cogdell Affidavit, Docket Entry No. 1155, p. 2 (sealed).

[57]Cruise's § 2255 Motion, Docket Entry No. 1102, p. 5; Cruise's § 2255 Supplement, Docket Entry No. 1191, pp. 4-6; Johnson's § 2255 Motion, Docket Entry No. 1115, p. 5.

the record that counsel made a strategic choice not to assert this defense.  Attorney Schaffer has stated that after his co-counsel spoke to Ivan Wood, who was the attorney Cruise retained when he was setting up his business, it became apparent that "waiving the attorney client privilege [between Cruise and Wood] . . . could be devastating to [Cruise's] defense."[58]  Attorney Schaffer also states that he explained this to Cruise, who ultimately "agreed that it was best not to use Mr. Wood as a witness."[59]

Petitioners argue that under the factors in United States v. Rosen, 582 F.2d 1032 (5th Cir. 1978), they were engaged in good faith practices and that their counsel were ineffective for failing to pursue evidence to establish that defense.[60]  The record reflects that counsel carefully reviewed the factual record and diligently prepared for trial[61] and that the decision not to pursue a good-faith defense under Rosen was a "conscious and informed decision on trial tactics and strategy" that "cannot be the basis for

---

[58]Schaffer Affidavit, Docket Entry No. 1142, pp. 7, 13 (sealed).

[59]Id. at 8, 13.

[60]Cruise's § 2255 Supplement, Docket Entry No. 1191, pp. 6-8; Johnson's § 2255 Motion, Docket Entry No. 1115, pp 30-31.

[61]Schaffer Affidavit, Docket Entry No. 1142, pp. 4-5 ("We had more than a dozen trial strategy meetings . . . most of the trial team was present and in almost every meeting . . . most of these meetings . . . would usually last for hours.") (sealed); Kennedy Affidavit, Docket Entry No. 1143, p. 4 ("We had every reason to believe we were going to trial, and we were actively preparing for trial . . . .") (sealed).

-21-

constitutionally ineffective assistance of counsel."[62]  Green v.
Johnson, 116 F.3d 1116, 1122 (5th Cir. 1997).

Johnson also argues that her counsel was ineffective in failing
to assert that she lacked the criminal intent necessary for the
criminal violation.[63]  This claim is meritless because there was
overwhelming evidence of Johnson's criminal intent.  Attorney
Cogdell's Affidavit summarized the evidence of Johnson's intent:

> Both the Indictment and the underlying proof to support
> it were rife with evidence [of] criminal conduct which
> resulted in harm to a myriad of victims through
> fraudulent and unnecessary prescriptions, billings for
> services not provided, continued billings for
> prescriptions and services after the patient informed
> them that the prescriptions were unnecessary, etc.
>
> . . . Unfortunately for Ms. Johnson, the proof required
> to demonstrate the criminal intent required by law was
> manifest and obvious.  Johnson (a non-physician) was even
> personally recorded on calls with care providers wherein
> she insisted upon them providing unnecessary prescrip-
> tions that simply maximized the profit to her and her

---

[62]The Rosen factors have never been applied in a case involving
conspiracy to commit health care and wire fraud.  The Fifth Circuit
has only applied the Rosen factors in controlled substance cases.
See, e.g., Rosen, 582 F.2d at 1033-36 (involving a violation of 21
U.S.C. § 841(a)(1)); United States v. Lamartiniere, 100 F.4th 625,
652 (5th Cir. 2024) (same).  The factors are used to determine
whether the defendant-physician was intentionally engaging in drug
pushing or whether the defendant-physician was merely performing
his job as a physician.  Rosen, 582 F.2d at 1033-36 ("A physician
is restricted to dispensing or prescribing drugs in the bona fide
treatment of a patient's disease, including a dispensing of a
moderate amount of drugs to a known addict in a good-faith attempt
to treat the addiction or to relieve conditions or suffering
incident to addiction.  However, under the guise of treatment a
physician cannot sell drugs to a dealer nor distribute drugs
intended to cater to cravings of an addict.  Congress did not
intend for doctors to become drug 'pushers'.").

[63]Johnson's Addendum, Docket Entry No. 1131, pp. 3-4.

-22-

husband.   Bribes and kickbacks for providing those unnecessary prescriptions were paid through the criminal organization on behalf of Johnson and her husband.   All the above conduct was engaged in for one primary purpose: to maximize financial gain to Johnson and her husband. For her to content that this was simply "a civil regulatory matter" is breathtaking in its audacity.[64]

For the reasons explained above, the court finds that Petitioners have failed to establish either prong of the Strickland test for these claims.

> v.   Failure of Schaffer, Kennedy, and Cogdell to Disclose Joint Representation

Petitioners' original § 2255 Motions assert that Cruise's counsel were ineffective because they owned a practice with codefendant Kenny Ozoude's counsel, Attorney Nathan Mays, and failed to disclose to the court that they were jointly representing codefendants in the case.[65]

In claims of ineffective assistance based on a conflict of interest a petitioner must show that there (1) was "an actual conflict of interest" that (2) "adversely affected his lawyer's performance."  Cuyler v. Sullivan, 100 S. Ct. 1708, 1718 (1980). "Joint representation does not necessarily create a conflict of interest."  United States v. Rico, 51 F.3d 495, 508 (5th Cir. 1995). But "'[w]here an attorney obtains confidential information helpful to one defendant but harmful to another, a conflict of interest may

---

[64]Cogdell Affidavit, Docket Entry No. 1155, p. 7 (sealed).

[65]Cruise's § 2255 Motion, Docket Entry No. 1102, pp. 5-6; Cruise's § 2255 Supplement, Docket Entry No. 1191, pp. 9-12; Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 5-6, 31-34.

exist.'"  United States v. Placente, 81 F.3d 555, 559 (5th Cir. 1996) (quoting Parker v. Parratt, 662 F.2d 479, 484 (8th Cir. 1981)).

Petitioners have failed to establish that their counsels' firm jointly represented codefendant Ozoude and Cruise.  Although Attorneys Schaffer and Kennedy shared a common office space with Attorney Mays, they were not business partners.  Attorneys Schaffer and Kennedy represented Cruise while Attorney Mays separately represented Ozoude.  Attorney Schaffer's Affidavit stated the following about the alleged conflict of interest and joint representation:

> There was never a conflict of interest between Nathan Mays and me.  Nathan Mays is a local criminal defense lawyer who started officing with me in April 2019.  We were never in a partnership and although we used the name of Schaffer, Carter, Kennedy, and Mays; we made clear that we were not a partnership. . . . We never shared income and Mr. Mays paid rent on a month-to-month basis.
>
> Regarding the Cruise case, I cannot recall even one meeting wherein Mr. Mays and I sat down and shared information.  We both intended to go to trial and prepared separately, but we never sat down to compare notes; mostly because I typically do not share information and I did not trust that Mr. Mays' client would not ultimately cooperate against Mr. Cruise. . . .
>
> . . .
>
> At no time did Mr. Mays and I share any sort of joint defense strategy or share in responsibilities for trial. We did not have one meaningful discussion with Mr. Mays about the case because we always thought it was possible that he would cooperate with the government.  At no time did Mr. Mays participate in a joint strategy meeting.[66]

---

[66]Schaffer Affidavit, Docket Entry No. 1142, pp. 2-3 (sealed).

-24-

The court concludes that Attorneys Schaffer, Kennedy, and Mays did not jointly represent Cruise and Ozoude.

Moreover, even if an actual conflict of interest had existed, Petitioners have failed to show how the conflict "adversely affected his lawyer's performance." Cuyler, 100 S. Ct. at 1718. Petitioners merely assert without evidence that their counsel pressured them into taking a plea deal so that they could "avoid inevitable Rule 44 disclosures at [the] pending trial": they offer no explanation about how or when they were "pressured [by their counsel] into accepting a plea agreement."[67]  Despite Petitioners' conclusory allegations, the record establishes that Petitioners voluntarily entered their guilty pleas.[68]

For the reasons explained above, the court finds that Petitioners have failed to establish either prong of the Strickland test for this claim.

---

[67]Cruise's § 2255 Motion, Docket Entry No. 1102, p. 5.  Cruise includes Johnson's counsel in this allegation.

[68]Schaffer Affidavit, Docket Entry No. 1142, p. 6 ("At no time did I pressure Mr. Cruise to plead guilty, and we were ready for trial at the time he decided to plead.") (sealed); Cogdell Affidavit, Docket Entry No. 1155, pp. 3-4 ("Not only did Ms. Johnson not only fully appreciate the reality of her situation before she entered her guilty plea, she also voluntarily participated in at least two debriefings that lasted many hours with the government after her plea of guilt.") (sealed); Re-Arraignment Transcript, Docket Entry No. 662, p. 28 lines 13-18 (Cruise), p. 30 lines 16-20 (Johnson) ("It is the finding of the Court that [the defendant] [Lashonia Johnson] is fully competent and capable of entering an informed plea and that [the defendant's] [her] plea of guilty is a knowing and voluntary plea supported by an independent basis in fact establishing each of the essential elements of the offense.").  Any independent claim that their pleas were involuntary fail for the same reasons explained in this footnote.

        b.    Failure of Schaffer, Kennedy, and Cogdell to Object to An Invalid Plea

Petitioners argue that their counsel were ineffective for pressuring them into pleading guilty.[69]

As discussed above, the record clearly establishes that Petitioners' pleas were knowing and voluntary. During their plea hearing the court ensured that Petitioners understood the consequences of pleading guilty, warned Petitioners about the maximum sentence they faced, and reviewed specific provisions of the plea agreement with Petitioners.[70] Based on Petitioners' responses to the court's questions, the court found the Petitioners were entering their guilty pleas knowingly, freely, and voluntarily.[71] This finding was affirmed in the court's order denying Petitioners' motions to withdraw their guilty pleas and by the Fifth Circuit.[72] There is no evidence that supports Petitioners' claims that they were pressured into pleading guilty.

Johnson argues that her counsel was also ineffective in failing to object to her plea agreement and plea because (1) the

---

[69]Cruise's § 2255 Motion, Docket Entry No. 1102, p. 5; Johnson's § 2255 Motion, Docket Entry No. 1115, p. 5.

[70]Rearraignment Transcript, Docket Entry No. 662, p. 13 line 22 thru p. 14 line 24; p. 18 line 23 thru p. 24 line 10.

[71]Id. at 28 lines 5-7, 13-20 (Cruise); p. 30 lines 16-22 (Johnson).

[72]Memorandum Opinion and Order (Cruise), Docket Entry No. 692, pp. 4-6; Memorandum Opinion and Order (Johnson), Docket Entry No. 693, pp. 4-6; Opinion of the Fifth Circuit Court of Appeals (Cruise), Docket Entry No. 1047, p. 1; Opinion of the Fifth Circuit Court of Appeals (Johnson), Docket Entry No. 1058, p. 1.

factual basis of her plea agreement provided facts that supported a conviction for violating 18 U.S.C. § 371 as opposed to 18 U.S.C. § 1349 and (2) Johnson did not plead to the facts or conduct alleged in the indictment during her re-arraignment.[73]

Johnson's additional claims are meritless.  Johnson's plea agreement contained a factual basis that supported the offense charged.[74]  Additionally, the testimony from the plea hearing clearly established that Johnson read the factual basis contained in the plea agreement and pled guilty to violating 18 U.S.C. § 1349 based on those facts:

> THE COURT:  I understand that you also wish to plead guilty to Count 2 of the indictment --
>
> DEFENDANT JOHNSON:  Yes, Your Honor.
>
> THE COURT:   -- which charges you with conspiracy to commit wire fraud in violation of 18, United States Code, Section 1349; is that correct?
>
> DEFENDANT JOHNSON:  Yes, sir.
>
> . . .
>
> THE COURT:  Before I can accept your guilty pleas, I must ask you a number of questions. . . .

---

[73]Johnson's Addendum, Docket Entry No. 1131, p. 1; Johnson's Motion to Amend, Docket Entry No. 1172, pp. 1-2.  Johnson also argues that the plea agreement she agreed to and signed in court was different than the plea agreement she reviewed with her attorney.  There is no evidence to support this claim. See Cogdell Affidavit, Docket Entry No. 1155, p. 5 (sealed) (stating that "the elements of the crime and the factual basis [in the signed plea agreement] were essentially identical as the prior 'version' that was previously signed in my office and was certainly not to the detriment of Johnson in any way").

[74]Plea Agreement, Exhibit C to Government's Response, Docket Entry No. 1203-3, pp. 10-12.

It is very important that you listen carefully to all my questions and that you answer all of my questions truthfully and completely for several reasons.

First, since you are now under oath, if you give an untrue answer to a question, you could be charged with a separate crime of perjury. . . .

Ms. Johnson, do you understand that?

DEFENDANT JOHNSON:  I do, sir.

. . .

THE COURT:  Also before I can accept your guilty plea, I must make a number of findings.  My findings are based on your answers to my questions.  In order for my findings to be correct, it is therefore necessary that all of your answers to my questions be truthful and complete.

. . .

THE COURT:  Okay.  How many times have you discussed this case with Mr. Cogdell?

DEFENDANT JOHNSON:  Several times.

THE COURT:  More than ten?

DEFENDANT JOHNSON:  Yes, sir.

THE COURT:  Has he discussed with you the charges against you and what the government would have to prove to establish your guilt?

DEFENDANT JOHNSON:  Yes, sir.

THE COURT:  Has he reviewed with you the evidence the government has against you?

DEFENDANT JOHNSON:  Yes, sir.

THE COURT:  Has he discussed with you how the federal advisory sentencing guidelines might apply in your case?

DEFENDANT JOHNSON:  Yes, sir.
THE COURT:  Has he answered all of your questions?

DEFENDANT JOHNSON:  Yes, sir.

-28-

THE COURT:  Are you fully satisfied with the advice and counsel that Mr. Cogdell has provided you?

DEFENDANT JOHNSON:  Yes, sir.

. . .

THE COURT:  . . . Ms. Johnson, would you please turn in your plea agreement to Page 8.

> Paragraph 16 says:  "Defendant has pleaded guilty because she is guilty of the charge contained in Count 2 of the indictment.  If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.  The following facts, among others, would be offered to establish the defendant's guilt."
>
> And on Pages 8, 9 and 10, the government sets out the facts it says it could prove if the case were tried.  Have you carefully read Pages 8, 9 and 10 of your plea agreement?

DEFENDANT JOHNSON:  Yes, Your Honor.

THE COURT: Are all the facts stated there true?

DEFENDANT JOHNSON: Yes, sir.

THE COURT:  Did you do everything described on those three pages of the plea agreement?

DEFENDANT JOHNSON:  Yes, sir.

THE COURT:  How do you plead to the offense charged against you in Count 2?  Guilty or not guilty?

DEFENDANT JOHNSON:  Guilty.[75]

Attorney Cogdell's Affidavit states that

. . . Johnson (somehow) contends that "she never admitted to guilt to the specific conduct alleged in the indictment" when she did exactly that through the execution of the Plea Agreement.  Ms. Johnson verbally

---

[75]Rearraignment Transcript, Docket Entry No. 662, p. 4 lines 1-8; p. 5 lines 1-6, 9-10, and 14-17; p. 10 lines 6-25; p. 29 lines 3-23.

agreed to the accuracy of the Factual Basis after it was read by the Government and this Court asked Ms. Johnson if the factual basis was accurate. In so doing, Johnson did in Court exactly what she contends in her pleading that she did not do . . .[76]

For the reasons explained above, the court finds that Johnson has failed to establish either prong of the Strickland test for this claim.

### c.   Failure of Schaffer, Kennedy, and Cogdell to Move to Withdraw Pleas

Petitioners argue that their counsel was ineffective in failing to move to withdraw their guilty pleas after becoming aware that the Government "withheld exculpatory information or avoided disclosures that undermined the factual basis of their original indictment."[77]  This claim has no merit because the record clearly establishes counsel were not ineffective in failing to move to withdraw Petitioners' pleas. Attorney Schaffer's Affidavit, which Attorney Cogdell adopted in its entirety,[78] states that

I never attempted to withdraw Mr. Cruise's guilty plea because I did not know that he wanted to withdraw it. . . . I specifically recall Mr. Cruise being enthusiastic about earning a reduction and not once did he ask me to help him withdraw his plea.

The first time that I learned that Mr. Cruise wanted to withdraw his plea was after he hired new counsel and they filed a motion to withdraw the plea. . . .

---

[76]Cogdell Affidavit, Docket Entry No. 1155, p. 5 (sealed).

[77]Johnson's § 2255 Motion, Docket Entry No. 1115, p. 35; Cruise's § 2255 Supplement, Docket Entry No. 1191, pp. 12–14.

[78]Cogdell Affidavit, Docket Entry No. 1155, p. 2 (sealed).

> In addition, at no time during the debriefing sessions did Ms. Wagner inform counsel that she failed to provide exculpatory evidence.  To my knowledge, we received all the evidence from the government, and we were never made aware that any exculpatory evidence was withheld.[79]

Moreover, Petitioners "terminated the attorney-client relationship with" Attorneys Schaffer, Kennedy, and Cogdell when Petitioners "[retained] new counsel to represent [them] in moving to withdraw [their] guilty plea[s]."  Petitioners therefore "cannot show prejudice."  Strother v. United States, Civil Action No. 4:21-CV-564, 2024 WL 3927240, at *8 (E.D. Tex. Aug. 22, 2024).  For the reasons explained above, the court finds that Petitioners have failed to establish either prong of the Strickland test for this claim.

#### d.   Failure of Armstrong, Darley, and Clouthier to Present Evidence of a *Brady* Violation

Petitioners claim that when they began cooperating with the Government after they pled guilty Cruise recorded the meetings.[80] Petitioners contend that these recordings establish that the Government deliberately failed to provide defense counsel with exculpatory provider agreements.[81]  Petitioners argue that their counsel were ineffective in failing to present these recordings in their motions to withdraw their guilty pleas.[82]

---

[79]Schaffer Affidavit, Docket Entry No. 1142, p. 8 (sealed).

[80]Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 36, 38-39.

[81]Id. at 38-39.

[82]Id. at 35; Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 14.

Counsel were not ineffective by failing to present the secret recordings in Petitioners' motions to withdraw their guilty pleas. The record clearly establishes that counsel did not have the secret recordings at the time they moved to withdraw Petitioners' guilty pleas. Attorney Armstrong submitted an Affidavit stating:

> . . . Cruise received the draft of the motion [to withdraw], was aware of its contents and had seen the conversations regarding strategy, and he **did not** suggest or instruct counsel to add or remove any language or arguments; more specifically, to include the fact that he had secretly recorded his debrief without the knowledge or consent of his attorney's or the representatives of the United States, as he now contends should have been done.
>
> . . .
>
> . . . [C]ounsel was not even in possession of the referenced "secret recordings" in advance of the hearing, so they could not have been offered even if the court deemed them relevant and admissible for some unknown reason.[83]

Attorney Darley submitted an affidavit stating:

> . . . These recordings were emailed the early morning hours of April 4, 2023, barely 24 hours prior to Johnson's hearing to Withdraw her Guilty Plea, held before Hon. Judge Lake on April 5, 2023.
>
> . . .
>
> Johnson approved the Motion to Withdraw the Guilty Plea prior to it being filed with no reference to recordings. . . . [I]f Johnson believed these recordings to be the "silver bullet" that she characterizes them to be (they are not), she could have insisted they be included in the Motion to Withdraw her plea, or sentencing memorandum filings, or she could have referenced the recordings in either hearing, had she chosen to do so.[84]

---

[83]Armstrong Affidavit, Docket Entry No. 1144, pp. 7, 9 (sealed).

[84]Darley Affidavit, Docket Entry No. 1152, pp. 2-3 (sealed).

The record establishes that the Government did not violate Brady.  The Government had no obligation to turn over exculpatory evidence to defense before Petitioners pled guilty because "Brady focuses on the integrity of trials and does not reach pre-trial guilty pleas."  Mansfield v. Williamson County, 30 F.4th 276, 280 (5th Cir. 2022).  Moreover, Petitioners claim that the Government failed to turn over "exculpatory provider agreements."[85]  However, that claim is patently false:  the Government turned over those documents to Petitioners in the production letter it sent on July 10, 2018.[86]

For the reasons explained above, the court concludes that Petitioners have failed to establish either prong of the Strickland test for this claim.[87]

> e.   Failure of Armstrong and Darley to Use the Secret Recordings to Impeach the Government

Petitioners argue that counsel were ineffective for failing to use the secret recordings to impeach the United States Attorney for

---

[85]Johnson's § 2255 Motion, Docket Entry No. 1115, p. 38 ¶ 14.

[86]United States Attorney's Email to Petitioners, Exhibit B to Government's Response, Docket Entry No. 1203-2, pp. 2–3 (sealed).

[87]Petitioners also argue that their counsel were ineffective for failing to present the secret recording on appeal.  Johnson's § 2255 Motion, Docket Entry No. 1115, p. 39.  It is clear from the record that counsel reviewed the record and only appealed "the issues that had arguable merit."  Armstrong Affidavit, Docket Entry No. 1144, p. 11 (sealed); Clouthier Affidavit, Docket Entry No. 1137, p. 1 ¶ 4 (sealed) (stating that the recordings did not pertain to Johnson's case).  For the same reasons discussed above, counsel were not ineffective for failing to present the secret recordings on appeal.

making inconsistent statements at the hearing on Petitioners' motions to withdraw their guilty pleas.[88]

To impeach with prior inconsistent statements, there must be a witness to impeach. Fed. R. Evid. 613(a) ("When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness."). Because the United States Attorney was not a witness for the defense or the Government, Petitioners' counsel could not use the secret recordings to impeach her.

In his affidavit, Attorney Armstrong explained why he did not use the secret recordings:

> . . . [T]here was no testimony or witness offered by the government regarding the debriefs other than [the] cross examination of Cruise. The purported value of any secret recordings of his debriefs, notwithstanding admissibility and ethical concerns, would only have been to impeach a contrary witness if such a witness had been called and testified inconsistently. As such, Cruise's belief that arguments of counsel are statements that can be impeached is misplaced.[89]

Also, Attorney Darley explained why he did not use the secret recordings:

> . . . [T]he recordings — even assuming they are relevant — and with any value at all, would have likely been used only to impeach witnesses adverse to Johnson. Neither the change of plea hearing or sentencing hearing consisted of adverse witnesses being called, rather there was testimony of the defendants, family members, and

---

[88]Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 43–45 ("Counsels Armstrong and Darley were aware of the recordings, and failed to bring them to the court's attention as evidence of the government's misconduct."); Cruise's § 2255 Supplement, Docket Entry No. 1191, pp. 13–14.

[89]Armstrong Affidavit, Docket Entry No. 1144, pp. 8–9 (sealed).

arguments of Counsel for the Government and all parties.[90]

For the reasons explained above, the court finds that Petitioners have failed to establish either prong of the Strickland test for this claim.

> f.   Failure of Darley to Object to the Presentence Investigation Report

Johnson argues that her counsel was ineffective in failing to review the final presentence investigation report with her.[91]  The record establishes that Johnson read and discussed the presentence report with her attorney before being sentenced:

> THE COURT:  Have you read the presentence investigation report before today?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Have you discussed it with your lawyer?
>
> THE DEFENDANT:  Yes, sir.[92]

After the court ruled on the objections to the Presentence Investigation Report filed by Johnson's lawyer, the court again addressed Johnson:

> THE COURT: Do you have any additional objections of your own to the Presentence Investigation Report or the proposed conditions?
>
> DEFENDANT JOHNSON:  No, sir.[93]

---

[90]Darley Affidavit, Docket Entry No. 1152, p. 3 (sealed).

[91]Johnson's Addendum, Docket Entry No. 1131, pp. 1-2.

[92]Transcript of Sentencing Proceedings Heard Before the Honorable Sim Lake, United States District Judge, Docket Entry No. 851, p. 2 lines 15-23.

[93]Id. at 3 lines 11-13.

Johnson additionally argues that her counsel was ineffective for failing to object to various facts contained in the final presentence investigation report.[94]

Johnson first argues that the final presentence investigation report falsely states that Dr. Jackson was paid an illegal kickback.[95] She argues that because Dr. Jackson was paid each day that he signed prescriptions, he was not receiving illegal kickbacks.[96] However, "Johnson's understanding of what constitutes a 'kickback' is inaccurate."[97] "The record reflects that Dr. Jackson was paid to sign prescriptions for compounded drugs–which is an illegal payment for referrals."[98] The payment system was set up so that "the more days [Dr. Jackson] spent acting in furtherance of the conspiracy, the more money he made."[99]

Johnson also argues that the final presentence investigation report misrepresents that $91 million was paid from the government to IFWAA. However, the plea agreement and final presentence

---

[94]Johnson's Addendum, Docket Entry No. 1131, pp. 1–2.

[95]Id. at 2.

[96]Id.

[97]Government's Response, Docket Entry No. 1203, p. 34 (sealed).

[98]Id.; Presentence Investigation Report, Docket Entry No. 686, pp. 20–22 ¶¶ 49–51 (sealed); Plea Agreement, Docket Entry No. 455, pp. 9–10 ("Defendant and her co-conspirators sent or caused to be sent claimants recruited by IFWAA to Dr. Jay Bender, Dr. James Jackson, and others, who were paid illegal remuneration in exchange for prescribing these compounded drugs to claimants, regardless of medical need or condition.").

[99]Government's Response, Docket Entry No. 1203, p. 35 (sealed).

investigation report never stated that $91 million was paid from the government to IFWAA — the documents reflect that Johnson and her co-conspirators caused $91 million in intended loss.[100]  Johnson agreed to this loss amount in her plea.[101]

For the reasons explained above, the court finds that Johnson has failed to establish either prong of the Strickland test for these claims.

g.   Failure of Clouthier to Adequately Represent Johnson on Appeal

Johnson claims that her counsel was ineffective on appeal in failing to (1) use the secret recordings, (2) raise a challenge to Johnson's plea, (3) rebut the loss calculation, (4) raise the rule 44 conflicts of her previous counsel, and (5) allow Johnson to review the appellate brief before filing it.[102]

"[A]ppellate counsel need not 'raise every nonfrivolous ground of appeal available' in order to be effective."  Higgins v. Cain, 720 F.3d 255, 265 (5th Cir. 2013) (quoting Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998)).  "Instead, appellate counsel's failure to raise an argument on direct appeal will be considered ineffective only when counsel fails to perform 'in a reasonably effective manner.'"  Id. (quoting Green, 160 F.3d at 1043).  "This

---

[100]Presentence Investigation Report, Docket Entry No. 686, p. 29 ¶ 64 (sealed).

[101]Plea Agreement, Docket Entry No. 455, p. 7.

[102]Johnson's Addendum, Docket Entry No. 1131, pp. 4–5.

standard requires that appellate counsel 'research relevant facts and law, or make an informed decision that certain avenues will not prove faithful.'" Id. (quoting United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000)). Therefore, "to determine whether appellate counsel's performance was deficient, [the court] must consider whether the . . . arguments are 'sufficiently meritorious such that [Johnson's] counsel should have raised [them] on appeal.'" Id. (quoting Phillips, 210 F.3d at 348).

As discussed at length above, Johnson's claims regarding the secret recordings, her plea, and alleged Rule 44 conflicts, all lack merit.[103] Counsel was therefore not ineffective in failing to raise these issues on appeal.

Although Attorney Clouthier admits that she did not allow Johnson to review the appellate brief before it was filed, Attorney Clouthier traveled to meet with Johnson and discussed potential appeal points with her.[104]

Finally, although Johnson argues that Attorney Cloutheir failed to rebut the loss calculation, the record establishes that Attorney Clothier raised the loss calculation issue on appeal.[105] If Johnson is attempting to argue that Attorney Clouthier should

---

[103]Attorney Clouthier explained in an Affidavit that she raised only meritorious claims on appeal. Clouthier Affidavit, Docket Entry No. 1137 (sealed).

[104]Clouthier Affidavit, Docket Entry No. 1137 (sealed).

[105]Opinion of the Fifth Circuit Court of Appeals, Docket Entry No. 1058, pp. 1-2.

have used a different argument on appeal to rebut the loss calcuation, that argument is procedurally barred. United States v. Alanis, 88 F. App'x 15, 22 (5th Cir. Feb. 10, 2004).

For the reasons explained above, the court finds that Johnson has failed to establish either prong of the Strickland test for these claims.

### 2.   Prosecutorial Misconduct

In their original § 2255 Motions Petitioners allege that the Government (1) violated Brady and (2) made false statements about Petitioners at sentencing.[106]  Johnson's addendum additionally asserts that the Government (1) violated the plea agreement by falsifying facts in the plea agreement and the presentence investigation report, (2) selectively prosecuted Petitioners, and (3) made false statements at the hearing on Petitioners' motions to withdraw their guilty pleas.[107]

A prosecutorial misconduct claim "may not be raised for the first time on collateral review without a showing of cause for failing to raise the issue on direct appeal and actual prejudice

---

[106]Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 39, 43-48.

[107]Johnson's Addendum, Docket Entry No. 1131, pp. 1-5.  The court will not address Johnson claims that the Government breached the plea agreement or her claim that she was selectively prosecuted.  The substance of these claims is addressed above in rejecting her claim that her counsel were ineffective for failing to object to the final presentence report and her claim that her counsel were ineffective for failing to raise a selective prosecution claim.

resulting from the alleged error." United States v. Galindo, Nos. 5:96-CR-0061(01), 5:99-CR-221, 2002 WL 31166824, at *3 (N.D. Tex. Sept. 18, 2002) (citing United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991)). "To prove 'cause,' a petitioner must show that an external obstacle prevented him from raising his claim either at trial or on direct appeal." Craft v. United States, No. CR H-04-442-13, 2008 WL 11424149, at *2 (S.D. Tex. June 18, 2008). "To prove 'actual prejudice,' the petitioner must show he has suffered an actual and substantial disadvantage as a result of the alleged error." Id.

Petitioners' prosecutorial misconduct claims were procedurally defaulted. Because Petitioners failed to raise their prosecutorial misconduct claims in their direct appeal and have not shown "adequate cause for failing to" do so, Petitioners' prosecutorial misconduct claims cannot be "presented for the first time in a § 2255 motion." Galindo, 2002 WL 31166824, at *3.

However, even if Petitioners' claims were not procedurally defaulted, their claims fail on the merits.

### a. Brady Violation

Petitioners argue that the Government violated Brady by failing to (1) turn over "exculpatory provider agreements" to Petitioners and (2) adequately research the defenses that allegedly applied to Petitioners.[108]

---

[108]Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 38-39.

"A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 126 S. Ct. 2188, 2190 (2006). "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quoting Strickler v. Greene, 119 S. Ct. 1936, 1952 (1999) (internal quotation marks omitted)).

Petitioners have failed to establish that the Government violated Brady. The claim that the Government failed to turn over "exculpatory provider agreements" to Petitioners is false because the Government made those documents available to Petitioners in the production letter it sent on July 10, 2018.[109] Moreover, the claim that the Government violated Brady by failing to adequately research the defenses that allegedly applied to Petitioners is without merit. Brady only requires the Government to "disclose evidence materially favorable to the accused," it does not require the Government to adequately research defenses that may apply in the case. Id.

b.    False Statements by the Government

Petitioners argue that the Government's statements at sentencing violated Napue v. Illinois, 79 S. Ct. 1173 (1959),

---

[109]United States Attorney's Email to Petitioners, Exhibit B to Government's Response, Docket Entry No. 1203-2, pp. 1-2 (sealed).

because the statements were false.[110]  Petitioners point to the following statements:  (1) "Obviously this is a large and serious fraud."; (2) "[Cruise] was involved in another entity, Team Work Ready, that did the exact same thing."; and (3) "[Cruise] admitted his role, and he admitted what he did."[111]

Courts apply a two-step analysis to charges of prosecutorial misconduct.  United States v. Duffaut, 314 F.3d 203, 210 (5th Cir. 2002).  First, courts decide "whether the prosecutor's comments were improper" and "if the comments were improper," then courts decide "whether they prejudiced the defendant's substantive rights."  Id.

The statements made by the Government at sentencing were proper and true.  First, the Government's statement that this case involved large and serious fraud was true:  "[t]he intended loss of the offense was approximately $91.7 million."[112]  Second, the Government's statement that Cruise was involved in Team Work Ready was true.  Cruise was the Chief Operating Officer at Team Work Ready ("TWR") when it was investigated for submitting false and fraudulent claims to the Federal Employee's Compensation Act.[113] The investigation found that "[t]he TWR staff, including John

---

[110]Cruise's § 2255 Supplement, Docket Entry No. 1191, p. 13; Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 46–48.

[111]Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 46–47.

[112]Presentence Investigation Report (Cruise), Docket Entry No. 659, p. 31 ¶ 78 (sealed).

[113]Id. at 10 ¶ 24.

Cruise, were directly aware of, and personally participated in the ongoing scheme."[114]  Finally, the Government's statement that Cruise admitted to his role in the fraud was true.  The record clearly establishes that Cruise plead guilty to the offense and was cooperating with the Government before he attempted to withdraw his guilty plea.[115]  His cooperation included providing the Government with an explanation of how their scheme worked.[116]

Johnson additionally argues that the Government violated Napue when it referred to an unsigned prescription as signed during the hearing on her motion to withdraw her guilty plea.[117]  Although the Government did refer to an unsigned prescription as signed, the mistake was immediately corrected.[118]  This misstatement therefore did not prejudice Petitioners.

For the reasons explained above, the court concludes that Petitioners failed to establish that the Government's comments were improper or that the Government's comments prejudiced their substantive rights.

---

[114]Id.

[115]Johnson's § 2255 Motion, Docket Entry No. 1115, pp. 36–38.

[116]Government's Response, Docket Entry No. 1203, p. 4 (sealed). The Government brought up his cooperation "to provide the Court with mitigating evidence . . . even though no Rule 5K.1.1 motion for downward departure had been filed."  Id. at 26 (sealed).

[117]Johnson's Addendum, Docket Entry No. 1131, p. 4.

[118]Motion Hearing Before the Honorable Sim Lake, United States District Judge, April 5, 2023, Docket Entry No. 694, p. 50 line 12 thru p. 51 line 7 ("So you're sending unsigned prescriptions to the – Mr. Ozoude, correct?").

## B.  Petitioners' Bond Requests

Pursuant to 18 U.S.C. § 3143(b), Petitioners have requested bond pending resolution of their § 2255 motions.[119]

"A convicted defendant does not have a constitutional right to bail pending appeal."  United States v. Nelson, NO. 4:17-CR-131-1, 2023 WL 3721340, at *2 (N.D. Miss. May 30, 2023) (citing United States v. Olis, 450 F.3d 583, 585 (5th Cir. 2006)). Although 18 U.S.C. § 3143(b) allows for the release of a convicted defendant under certain circumstances, it also "'establishes a presumption against' the release of a convicted defendant pending appeal."  Id. (quoting Olis, 450 F.3d at 585).  "To overcome the presumption, a convicted defendant bears the burden of showing:

> (1)  [by clear and convincing evidence] that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2)  that the appeal is not for purpose of delay;
>
> (3)  that the appeal raises a substantial question of law or fact; and

---

[119]Motion for Release Pending Appeal, Docket Entry No. 1101 (Cruise); Motion for Release Pending Appeal, Docket Entry No. 1112 (Johnson); Motion to Take Judicial Notice of Facts in Support of Bond Pending Appeal, Docket Entry No. 1129 (Cruise); Notice of No Opposition and Request for Ruling on Defendant's Motion for Bond Appeal, Docket Entry No. 1132 (Johnson); Petitioner Lashonia Johnson Motion for Bond Pending Her 2255 in Response to United States Opposition, Docket Entry No. 1151; Petitioner Lashonia Johnson Motion for Bond Pending Her 2255 in Response to United States Opposition, Docket Entry No. 1154; Petitioner Lashonia Johnson Motion for Bond Pending Her 2255 in Response to United States Opposition, Docket Entry No. 1161; Amended Motion for Release Pending 28 U.S.C. 2255 Habeas Review Appeal, Docket Entry No. 1171 (Johnson); Emergency Motion to Expedite Ruling and Grant Temporary Release Pending 2255 Resolution, Docket Entry No. 1190 (Johnson); Motion for Status and Expedited Ruling on Emergency Release and § 2255 Motion, Docket Entry No. 1217 (Johnson).

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."

Id. (quoting United States v. Valera-Elizondo, 761 F.2d 1020, 1025 (5th Cir. 1985)).  "A substantial question is one that is either novel, which has not been decided by controlling precedent, or which is fairly doubtful; is of more substance than would be necessary to a finding that it was not frivolous; and is a close question or one that very well could be decided the other way." Id. at *4 (quoting Valera-Elizondo, 761 F.2d at 1023–24) (internal quotation marks omitted).

As discussed extensively above, Petitioners' § 2255 Motions fail to raise meritorious claims, let alone substantial questions of law or fact.  Accordingly, Petitioners have failed to overcome the presumption against their release pending appeal. Their requests will be denied.

## C.    Johnson's Motion for Judicial Admission and Judicial Estoppel

Johnson asks the court to "find that the Government is bound by its judicial admissions and to apply judicial estoppel regarding the Government's inconsistent factual and legal positions concerning alleged 'kickbacks' in this case."[120]

"Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is

---

[120]Petitioner's Motion for Judicial Admission and Judicial Estoppel, Docket Entry No. 1195, p. 1.

contrary to a position previously taken in the same or some earlier proceeding.'"  Hopkins v. Cornerstone America, 545 F.3d 338, 347 (5th Cir. 2008) (quoting Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391, 396 (5th Cir. 2003)).  "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them."  Martinez v. Bally's Louisiana, Inc., 244 F.3d 474, 476 (5th Cir. 2001).

As discussed above, the Government did not take inconsistent factual and legal positions concerning the kickbacks in this case. The record reflects that Dr. Jackson was paid to fraudulently sign prescriptions for compounded drugs – which is an illegal kickback.[121] The Government has maintained this position throughout the entirety of this action.[122]  Johnson's motion will therefore be denied.

**D.    Johnson's Motion to Correct the Presentence Investigation Report**

Johnson has filed a motion seeking to correct alleged factual inaccuracies in her presentence investigation report under Rule 32 of the Federal Rules of Criminal Procedure.[123]

---

[121]Johnson's Presentence Investigation Report, Docket Entry No. 686, pp. 20–22 ¶¶ 49–51 (sealed); Plea Agreement, Docket Entry No. 455, p. 9 ("Defendant and her co-conspirators sent or caused to be sent claimants recruited by IFWAA to Dr. Jay Bender, Dr. James Don Jackson, and others, who were paid illegal remuneration in exchange for prescribing these compounded drugs to claimants, regardless of medical need or condition.").

[122]See, e.g., Government's Response, Docket Entry No. 1203, pp. 34–35 (sealed).

[123]Pro Se Motion for Correction of Presentence Investigation Report Pursuant to Fed. R. Crim. P. 32, Docket Entry No. 1213, pp. 1-2 (sealed).

Because "complaints regarding the contents of a presentence investigation report must be raised prior to the imposition of [the] sentence," a district court lacks jurisdiction over the merits of a post-judgment motion that seeks to correct a presentence investigation report. United States v. Engs, 884 F.2d 894, 897 (5th Cir. 1989) (applying this holding to a motion under Rule 32 of the Federal Rules of Criminal Procedure); see also United States v. Ardoin, 2026 WL 479287, at *7 (E.D. Tex. Feb. 19, 2026) (applying the same holding to a motion under Rule 36 of the Federal Rules of Criminal Procedure).

## III.  **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2255 Proceedings states that a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability will not issue unless that applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)).  Under that controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner

-47-

or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (internal quotation marks omitted).  A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

Because the court concludes that reasonable jurists could not find any of Petitioners' claims meritorious, a certificate of appealability will be denied.

### IV.   Conclusion and Order

Petitioners' Motions to Jointly File 28 USCS § 2255 Petition Pursuant to F.R.C.P. 20 (Docket Entry No. 1104 [Cruise], No. 1114 [Johnson]) are **GRANTED.**

Johnson's motions to amend that were filed before the one-year filing deadline (Addendum Additional Grounds to the 28 U.S.C. 2255, Docket Entry No. 1131; and Motion to Amend "Prior Submitted" 2255 Motion Pursuant to Fed. R. Civ. P. (15)(a), Docket Entry No. 1172) are **GRANTED.**  Johnson's remaining motions to amend (Docket Entry Nos. 1179, 1183, and 1188) are **DENIED AS MOOT** because they were filed after the one-year filing deadline and reassert arguments included in Docket Entry Nos. 1131 and 1172.

For the reasons explained above, Petitioners' Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 1102 [Cruise], No. 1115 [Johnson]) as amended by Johnson's Addendum, Johnson's Motion to

-48-

Amend, and Cruise's § 2255 Supplement (Docket Entry Nos. 1131, 1172, and 1191, respectively) are **DENIED.**

Accordingly, Petitioners' Requests to File Oversized 28 U.S.C. § 2255 Briefs (Docket Entry No. 1100 [Cruise], No. 1113 [Johnson]); Johnson's motions asking the court to unseal certain documents (Docket Entry Nos. 1162, 1163, 1222); Johnson's Motion for Discovery Under Rule 6 of the Rules Governing 2255 Proceedings (Request for Grand Jury Transcript) (Docket Entry No. 1175); Cruise's Motion for Evidentiary Hearing Pursuant to 28 U.S.C. § 2255(b) (Docket Entry No. 1223); and Cruise's Request to Take Judicial Notice of Substitution of Government Counsel (Docket Entry No. 1224) are **DENIED AS MOOT.**

Petitioners' motions for release pending appeal (Docket Entry Nos. 1101, 1112, 1132, 1151, 1154, 1161, 1171, 1178, 1190, 1217) are **DENIED.** Accordingly, Cruise's Motion to Take Judicial Notice of Facts in Support of Bond Pending Appeal (Docket Entry No. 1224) is **DENIED AS MOOT.**

Johnson's Motion for Judicial Admission and Judicial Estoppel (Docket Entry No. 1195) is **DENIED.**

Johnson's Pro Se Motion for Correction of Presentence Investigation Report Pursuant to Fed. R. Crim. P. 32 (Docket Entry No. 1213) is **DISMISSED.**

Because the court concludes that no reasonable jurist could find any of Petitioners' claims meritorious, certificates of appealability are **DENIED.**

Petitioners have filed a number of papers, which they may characterize as motions, however labeled. The court has attempted to identify and address all of the Petitioners' motions in this Memorandum Opinion and Order. Due to the volume of papers filed by the Petitioners, who are appearing pro se, the court may have failed to identify a paper that Petitioners believe to be a motion. For the sake of completeness, in the event that the court has not expressly ruled on a paper that Petitioners believe to be a motion, it is **DENIED** for the reasons stated in this Memorandum Opinion and Order.[124]

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 15th day of April, 2026.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[124]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with this federal habeas action. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.